UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LINDA M. GOODMAN,<br><br>        Petitioner,<br><br>   v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security<br>Administration,<br><br>        Respondent. | Case No. 1:13-CV-00413-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Currently pending before the Court for consideration is Linda Goodman's Petition for Review (Docket No. 1) of the Respondent's denial of social security benefits, filed September 18, 2013. The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record ("AR"), and for the reasons that follow, will affirm the decision of the Commissioner.

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on August 6, 2009, claiming disability caused by back pain, disc and joint

**MEMORANDUM DECISION AND ORDER - 1**

disease, scoliosis, depression, brain damage, and headaches. This application was denied initially and on reconsideration, and a hearing was held on October 25, 2011, before Administrative Law Judge ("ALJ") Kurt Schuman. After hearing testimony from Petitioner, Petitioner's husband, a vocational expert, and a medical expert, ALJ Schuman issued a decision finding Petitioner not disabled on October 31, 2011. Petitioner timely requested review by the Appeals Council, which denied her request for review on July 17, 2013.

Petitioner appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was 57 years of age. Petitioner completed high school. Petitioner's prior work experience includes work as a cashier at K-Mart, where she was working part-time for twenty hours each week at the time of the hearing.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantially gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset date of January 1, 2009. At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's degenerative disc disease of the cervical and lumbar spine, scoliosis of the lumbar spine, seizure disorder, headaches, gastroesophageal reflux disease, hypertension, and hyperlipidemia severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for the listed impairments, specifically considering Listing 12.00C to assess the severity of her mental

**MEMORANDUM DECISION AND ORDER - 2**

impairments. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity ("RFC") and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work.

The ALJ found Petitioner was able to perform her past relevant work as a survey worker, cashier checker, and school cafeteria cook. Because the ALJ found Petitioner able to perform her past relevant work, the ALJ did not consider whether the Petitioner retained the capacity to make an adjustment to other work at step five.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It

**MEMORANDUM DECISION AND ORDER - 3**

is more than a scintilla but less than a preponderance, *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard a claimant's self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

Petitioner contends the ALJ erred at step four because the ALJ failed to properly consider the Petitioner's statements regarding the intensity, persistence, and limiting effects of her symptoms. Thus, the Petitioner claims the ALJ's RFC assessment was incorrect, and he should

**MEMORANDUM DECISION AND ORDER - 4**

not have found Petitioner capable of light work. Second, Petitioner contends the ALJ did not properly consider the lay testimony of her husband, who testified about Petitioner's seizures and falls. And finally, Petitioner argues the ALJ did not consider the opinion of her treating physicians, specifically psychiatrist Mason Robison and neurologist Richard Hammond.

1.      **Petitioner's Residual Functional Capacity**

At the fourth step in the sequential process, the ALJ determines whether the impairment prevents the claimant from performing work which the claimant performed in the past, i.e., whether the claimant has sufficient residual functional capacity to tolerate the demands of any past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). A claimant's residual functional capacity is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a). An ALJ considers all relevant evidence in the record when making this determination. *Id*. Generally, an ALJ may rely on vocational expert testimony. 20 C.F.R. § 404.1566(e); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). An ALJ must include all limitations supported by substantial evidence in his hypothetical question to the vocational expert, but may exclude unsupported limitations. *Bayliss*, 427 F.3d at 1217. The ALJ need not consider or include alleged impairments that have no support in the record. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1163–64 (9th Cir. 2000).

The ALJ restricted Petitioner to light work, with restrictions that included no more than frequent balancing and climbing of ramps and stairs; no more than occasional stooping, crouching, kneeling, crawling and overhead reaching with her left upper extremity; no climbing; no concentrated exposure to excessive vibration; moderate use of moving machinery and unprotected heights; and work that requires no more than frequent routine decision making and frequent workplace changes. (AR 17.) Substantial evidence in the record supports the ALJ's

**MEMORANDUM DECISION AND ORDER - 5**

RFC finding.

On her disability application, Petitioner alleged disability due to back pain, disc disease, scoliosis, seizure disorder, headaches, GRD, hypertension, and hyperlipidemia. (AR 15.) Petitioner, when filling out her disability form, checked every single box, alleging that her impairments caused her difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, hearing, climbing stairs, seeing, remembering, completing tasks, concentrating, understanding, following instructions, using her hands, and getting along well with others. (AR 213.) However, the ALJ considered the medical evidence of record, finding that it did not support the alleged functional limitations Petitioner described.

The ALJ included a detailed discussion of the medical evidence of record in his written determination. (AR 19.) First, the ALJ considered Petitioner's disc disease, scoliosis, and headaches. The ALJ noted that despite Petitioner's complaints of disabling pain as a result of these conditions, the medical evidence indicated her back demonstrated normal curvature, she was able to stand on tip-toes, and displayed a normal gait. (AR 19, 268, 316, 318-19.) The ALJ cited Petitioner's x-rays taken at the time she visited the emergency room on April 12, 2009, which indicated only mild degenerative disc changes at L2-L3 and L3-L4. (AR 19, 317-18.)

Next, the ALJ considered Petitioner's headaches, which were apparently exacerbated after a motor vehicle accident sustained on April 30, 2009. (AR 19, 315.) The ALJ noted petitioner was diagnosed with tension headache, post-accident. Her neurologist, Dr. Hammond, indicated in June of 2009 the Petitioner's headaches were caused by whiplash as a result of the accident. (AR 19, 270.) The ALJ discussed Dr. Hammond's findings and conclusions in detail, which noted "classic whiplash," but that she had a normal station and was able to ambulate without assistance. (AR 19, 270.) Dr. Hammond referred her to physical therapy.

**MEMORANDUM DECISION AND ORDER - 6**

The ALJ then discussed Petitioner's failure to follow through with physical therapy. (AR 19.) During her third physical therapy visit, Petitioner insisted the therapist fill out her disability form, despite the therapist's opinion that, with home exercise, Petitioner could hope to regain 85% improvement. (AR 20, 254.) The ALJ noted that the physical therapist was of the opinion Petitioner "does not demonstrate a desire to improve." (AR 20.) A follow up visit to Dr. Hammond indicated he was of the opinion that "there are lots of people with neck and back pain similar to her that still continue to work." (AR 268.) Finally, the ALJ noted that, in February of 2010, Petitioner reported her headaches improved by 50% since she began medication. (AR 20, 323, 378-79, 420, 458.)

The ALJ discussed also Petitioner's seizure disorder. He cited the fact that an EEG in July of 2009 did indicate evidence of focal and generalized irritability compatible with head trauma. (AR 20.) Then, in October 2009, a follow up EEG revealed compatibility with a clinical seizure state with a primary left temporal focus and possible second independent focus in the right anterior temporal derivatives. (AR 20, 336). But, the ALJ cited the evidence in the record that despite her seizures, Petitioner continued to drive, and her doctor at the time did not indicate she could not drive. (AR 20.)

The ALJ next discussed Petitioner's GERD, hypertension, and hyperlipidemia, which were well controlled with medication. (AR 20, 312-313, 323, 420, 458.)

The ALJ gave significant weight to the medical expert, Dr. Atkin, who reviewed the medical records and was present during Petitioner's testimony at the hearing. The ALJ reached the opinion that, as a result, Dr. Atkin's analysis was the most comprehensive of all opinions in the record. (AR 21.) Dr. Atkins testified Plaintiff had no more than a mild limitation in her ability to maintain social functioning or sustain concentration, persistence and pace. (AR 21, 16,

**MEMORANDUM DECISION AND ORDER - 7**

75-76.) Secondarily, the ALJ credited the state agency reviewing physicians, who were of the opinion that Petitioner retained the mental and physical capacity to perform work related functions. (AR 21, 338-50, 352-57.)

Petitioner generally argues that the above evidence, coupled with Petitioner's testimony, indicates Petitioner must live with these conditions and is making an effort to treat her symptoms with medication but that her symptoms still interfere with her ability to sustain full-time work. Pet. Brief at 5. However, when medical reports could support a contrary opinion or are otherwise inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Morgan v. Comm'r of Social Security Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). It is not for the Court to second guess the ALJ under the circumstances here, as there is substantial medical evidence of record supporting the ALJ's conclusion that Petitioner is capable of light work and can return to her prior work.

2.  **Petitioner's Credibility**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Reddick*, 157 F.3d at 722. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (holding that an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. *Burch*, 400 F.3d at 680.

**MEMORANDUM DECISION AND ORDER - 8**

General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick*, 157 F.3d at 722.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). When the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and treatment measures taken by the claimant to alleviate those symptoms. *See* Soc. Sec. Ruling 96-7p.

Here, the ALJ rejected Petitioner's accounts of disabling pain, finding her complaints not fully credible. The ALJ cited several "clear and convincing reasons" to reject her testimony that her back, neck, and headache pain rendered her incapacitated. At the hearing, Petitioner testified she could not count change and could not concentrate or remember how to do things. (AR 40.) But the ALJ noted she could grocery shop, pay bills, count change in her cashier position at K-

**MEMORANDUM DECISION AND ORDER - 9**

Mart, use a checkbook, and handle a savings account. (AR 19.) Petitioner testified she had been working at K-mart for 20 hours a week for the past four years. (AR 43.) Petitioner testified also that her knees, back, shoulder, discs, and joints hurt to the point it was painful to stand. (AR 44.) But, the ALJ noted that in addition to her part time job, Petitioner could address her personal needs, take care of her husband, children and pets, prepare meals, and perform housekeeping duties such as laundry and cleaning. (AR 19, 208-15.) Further, the ALJ, by discussing the medical evidence of record, indicated the medical evidence was inconsistent with Petitioner's self-reports of disabling pain. (AR 19-21.)

Thus, while the ALJ found Petitioner did indeed suffer from limitations caused by pain, he discredited Petitioner's reports that her pain limited her from all work. He cited clear and convincing reasons in his written determination supporting his opinion, and the resulting RFC. In conclusion, the ALJ discredited Petitioner's pain testimony due to the inconsistencies between her allegations of complete disabling pain, which contradicted the medical evidence and her own statements regarding her daily activities. (AR 21.) The ALJ did not err.

3.  **Physician Testimony**

Petitioner argues it was error for the ALJ to fail to consider the opinion of Petitioner's treating psychiatrist, Dr. Mason Robison, who diagnosed Petitioner with major depression recurrent severe, ADHD, dependent personality, and resulting learning disability. According to Dr. Robison, Petitioner's mental condition was severe enough to cause a disturbance in the role performance or coping skills in several areas, including vocational, financial, social, and family. (AR 259.)

But the ALJ did consider Dr. Robison's opinions at step two of his analysis. (AR 16-17.) Although the ALJ did not specifically name Dr. Robison, in his findings, the ALJ discussed

**MEMORANDUM DECISION AND ORDER - 10**

Petitioner's mental impairments of major depressive disorder and ADHD, concluding they did not cause more than "minimal limitations in the claimant's ability to perform basic mental work activities and are therefore nonsevere." (AR 16.) By finding her mental limitations non-severe, the ALJ did not discuss her limitations further in his RFC finding, other than to limit her to work that required no more than "routine" decision making and "routine" workplace changes. (AR 17.) The ALJ's RFC therefore adequately considered Petitioner's functional limitations caused by her non-severe mental impairments.

Next, Petitioner argues the ALJ erred because he did not consider Dr. Hammond's statement that Petitioner may have complex partial seizures and suffers from frequent falls. (AR 482.) Dr. Hammond, in an office follow up note dated June 11, 2012, did note Petitioner reported seizures and falls as a result. Importantly, Dr. Hammond noted the scans of her head taken over the years were "unrevealing." In fact, Dr. Hammond's note indicates the CT scan of Petitioner's head was "normal," and an MRI in 2010 was reported as "normal." (AR 483.) Dr. Hammond was of the opinion that Petitioner "may very well be having seizures …[and] complex partials," but because Petitioner's 2009 imaging studies did not reveal any "obvious seizure discharges," Dr. Hammond elected to order additional tests. (AR 483.)

In other words, Dr. Hammond's notes are inconclusive, and entirely consistent with the ALJ's analysis and conclusion that Plaintiff did have a seizure disorder, but that it did not significantly interfere with her ability to perform work related functions. (AR 15, 20) Furthermore, Dr. Hammond's June 2012 follow up visit occurred after the ALJ issued his written determination on November 21, 2011. And other than making a blanket assertion that the ALJ failed to consider the follow up note, Petitioner does not identify how the June 2012 records undermine the ALJ's opinion.

**MEMORANDUM DECISION AND ORDER - 11**

4.  **Lay Witness Testimony**

Petitioner correctly notes that the ALJ did not discuss Mr. Goodman's testimony. During the hearing, Petitioner's husband testified he has witnessed her absence seizures, and that they occur "once or twice a day" where she "zones out" for a minute or two. (AR 69.) Mr. Goodman testified also that his wife has fallen, and does so at least once or twice a week. (AR 70.)

Generally, an ALJ must consider evidence from sources other than the claimant, including family members and friends, to show the severity of a claimant's impairment. 20 C.F.R. § 404.1513(d)(4); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006). Lay testimony regarding a claimant's symptoms constitutes competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (internal citations omitted)); *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294 (9th Cir. 1999). But, "where the ALJ's error lies in failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F3d 1050, 1056 (9th Cir. 2006). In other words, if the error is harmless, and inconsequential to the ultimate non-disability determination in the context of the record as a whole, the failure to discuss lay testimony is not grounds for reversal. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012.)

Mr. Goodman's testimony did not describe any limitations beyond those Petitioner herself described, which the ALJ discussed at length and rejected based on well-supported, clear and convincing reasons. Specifically, the ALJ determined that Petitioner's claim of a seizure

**MEMORANDUM DECISION AND ORDER - 12**

disorder resulting in the inability to work was not supported by the medical evidence of record, citing her 2009 EEG which revealed compatibility with a clinical seizure state, but was contradicted by a February 2010 physical examination that was unremarkable. Further, at the time of the hearing, Petitioner was still working part time and continued to drive a car. (AR 20). Additionally, the ALJ noted that, although the Petitioner suffered from falls, she continued to be able to grocery shop and perform housekeeping duties. (AR 16.)

Because the ALJ validly rejected the limitations described by Mr. Goodman in discussing Petitioner's testimony, the Court concludes the ALJ's failure to give reasons specific to Mr. Goodman for rejecting his testimony did not alter the ultimate nondisability determination. Thus, the ALJ's error was harmless.

## CONCLUSION

The ALJ did not err in weighing the evidence as he did or in finding Petitioner's testimony regarding the severity of her impairments not credible. Although the ALJ erred in failing to give germane reasons for rejecting the lay witness testimony, such error was harmless given the lay testimony described the same limitations Petitioner did, and the ALJ's reasons for rejecting Petitioner's testimony apply with equal force to the lay testimony. The ALJ's decision will be affirmed as supported by substantial evidence.

# ORDER

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED** and that the petition for review is **DISMISSED**.

Dated: **December 22, 2014**

Honorable Candy W. Dale
United States Magistrate Judge